JOSEPH MONTGOMERY *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Continuance. Absent witness. Compulsory process.*

   Under Code 1892, § 1425, regulating the subject, where a defendant in a criminal case had not had opportunity to obtain compulsory process for a witness on account of whose absence he desired a continuance, and the facts which he expected to prove by him were material to the defense, and such process would probably have secured his presence, it was error not to have continued the case, or postponed it to another day, although the prosecuting attorney admitted that the witness, if present, would have testified as shown in the affidavit.

2. SAME. *Assault with intent to kill. Assault and battery with intent to kill.  Code 1892, § 967. Instruction. Counts in indictment.*

   Where a defendant was charged, under Code 1892, § 967, in one count with an assault with intent to kill and murder, and in another count of the same indictment with an assault and battery with like intent, and there was no evidence of the battery, it was error to instruct the jury, generally, that the want of such evidence was immaterial, drawing no distinction between the counts of the indictment.

3. SAME. *Practice. Time of granting instructions.*

   The proper time for granting instructions is after the close of the evidence and before the argument of the case. While the court has the right to grant an instruction at any time before the jury retires, it should not be done after argument is commenced, except on rare and emergent occasions and with opportunity to the other party to prepare and request counter charges.

4. SAME.

    The procuring of an instruction in a criminal case from the court
    during the argument for defendant, whose counsel had no notice
    thereof until it was produced for the first time during the closing
    argument for the state, was error, though on objection the
    state's attorney offered to permit defendant's counsel then to
    answer it.

FROM the circuit court of, first district, Hinds county.

HON. DAVID M. MILLER, Judge.

Montgomery, the appellant, was indicted, tried, and con-
victed of an assault with intent to kill and murder, or of an
assault and battery with like intent, both crimes being charged
in the indictment and a general verdict of guilty being ren-
dered. From this conviction he appealed to the supreme court.

When the case was called for trial, two of defendant's wit-
nesses were absent who had been duly subpœnaed. He made
an application for a continuance, based upon an affidavit that
he expected to prove by one of the absent witnesses (Pinkie
Daniels) that, at the time defendant shot at Simon Bell, Bell
was assaulting defendant with a shotgun and was attempting
to shoot him, and that defendant shot at Bell in self-defense,
and that defendant got the pistol he used in shooting at Bell
in the house of Pinkie Daniels, where the shooting occurred,
and got it after Bell had been pursuing him with a gun and
was coming back toward the house with the gun; that he ex-
pected to prove by the other witness (Robert Bankston) that
Simon Bell had gone away from the house, and sat down on
the side of the road, some distance from the house, and that he
(Bankston) went to Bell and insisted that he stop pursuing
defendant with his gun, and Simon stated that he intended to
assault defendant, and thereupon Bell did, having his gun with
him, go back to the house where defendant was, and after re-
turning Bell shot defendant in the face before defendant shot
at Bell with the pistol. The district attorney admitted that
these absent witnesses would testify, if present, to what was

stated in the affidavit, and the court overruled the motion for a continuance.

*Williamson & Wells,* for appellant.

Upon the proof in this case an indictment against Simon Bell for assault and battery with intent to kill and murder Joe Montgomery could be sustained, whereas nothing but an assault with intent, in any view of the evidence, is even pretended to be proven against Montgomery, who was shot by Bell; but Bell was not hit or hurt in any way.

On a close question like this it was extremely important that Montgomery should have had the presence of the absent witnesses and should have had the opportunity to compel their attendance.

The mere fact that the district attorney is willing to admit that the witnesses, if present, would swear to the statements set out in the application does not justify the court in refusing a continuance or postponement of the case, where there has been no opportunity for compulsory process.

Now the court held that defendant was entitled to continuance, and a continuance would have been granted but for the fact that the state made the admission provided for under the statute. Under this state of the case the agreement to admit as required by statute does not justify the court in refusing continuance, the opportunity for compulsory process not being given the defendant. *Strauss* v. *State,* 58 Miss., 53; *Long* v. *State,* 52 Miss., 31; *Parker* v. *State,* 55 Miss., 414; *Foochee* v. *State,* 82 Miss., 513; *Hemingway* v. *State,* 68 Miss., 371.

The court below erred in the granting of the sixth instruction for the state. In the first place, the time and manner of giving this instruction was very unfair to the defendant and most certainly prejudiced his case with the jury. The opening argument for the state was closed, and while attorney for defense was arguing the case the court granted the instruction for the

state without the knowledge of the defendant's attorneys. The case was urged for defense upon the idea that Simon Bell was the aggressor and did actually shoot Montgomery, and that the indictment charged assault and battery, and that Montgomery did shoot, maim, etc., with intent to kill Bell, when the proof showed that Montgomery did not shoot, maim, and wound Bell, but was shot by Bell, and most likely the grand jury had indicted the wrong man, since they made that charge. After close of argument for defense the district attorney nearly finished his closing speech and then picked up this sixth instruction and said to the jury: "Now, gentlemen of the jury, the court has given you this instruction for the state to answer the argument of defendant's counsel." This was the first knowledge defendant's counsel had of the granting such instruction, and at once objected to the granting of the instruction by the court and to the statement of the district attorney as to the court's purpose in giving it.. The court answered the objection both to the instruction and the remark of the district attorney with absolute silence, and permitted the district attorney to read the instruction.

The district attorney then turned and said: "The gentleman may answer that now if he can." Counsel for defense simply remarked to the jury that the court did not grant instructions to answer arguments of attorneys. The court said nothing. Does not this court see what effect conduct like that on the part of the trial court and district attorney would have upon a jury? The court should have told the jury that the instruction was not given for the purpose assumed by the district attorney.

Secondly, we do not think the sixth instruction announced the law. The indictment charges assault and battery; that the defendant not only assaulted, etc., with intent to kill and murder Bell, but did shoot, strike, and wound Bell with intent, etc.

Now the court by the instruction told the jury that the charge of shooting, wounding, and maiming made no difference whatever, but even if the evidence showed defendant did not

shoot, maim, etc., but shot at Bell with intent to kill, etc., when defendant was in no real or apparent danger of losing life, etc., at the hands of Bell, that defendant is guilty. The instruction does not say guilty of what. They found him guilty as charged in the indictment.

*J. N. Flowers,* assistant attorney-general, for appellee.

Counsel for appellant complain of the action of the court in refusing to grant a continuance and in giving instruction No. 6 for the state.

As to denying application for continuance, it will be noted that accused was indicted at the January, 1903, term, and that two other terms of court had passed when this application for continuance was made. It does not appear why Robert Bankston was not present. No postponement of the trial to a later day of the term was asked, although the application for continuance was made on Monday, the 12th day of September, the seventh day of the term, and the law provides for a term of forty-two days for this court.

Besides, defendant introduced an eyewitness in the person of Sis Dossett. The testimony of these absent witnesses would have been cumulative. If they had appeared and sworn that Montgomery shot in self-defense, they would have contradicted the accused himself. He says he fired after Bell had shot him, as Bell was running away. He does not say he shot in self-defense. He admits, really, that he was in no danger when he made his shots at Bell. He was not entitled to a continuance because of the absence of witnesses by whom he expected to prove that the thing did not happen the way he, the accused, says it happened.

And again, as far as this record shows, the witness Bankston could have been had during the trial—that is, the showing as to how the accused was hurt by the action of the court upon his application for a continuance should have been made at the hearing of the motion for a new trial. If this is not done, this

court has no way of knowing whether appellant has been wronged; unless this is done, this court has no way of knowing whether the witness appeared during the trial or was available. This is the correct theory, and this showing should always be required on the motion for a new trial. Unless this is done, the court has no better view point at the end of the trial than it had at the beginning, except in so far as information may incidentally have cropped out in the course of the trial. This court held this should be done in *Strauss* v. *State,* 58 Miss., 53.

As to the giving of instruction No. 6 after argument had begun, see *Wood* v. *State,* 64 Miss., 776.

Whether the instruction charged assault with intent or assault and battery with intent, the accused could have properly been convicted under it for assault with intent to kill, and this is what was done. The instruction advised the jury that they could do this.


CALHOON, J., delivered the opinion of the court.

The motion for continuance should have been granted, or the court should have postponed the cause to another day of the term if it saw proper. The docket is called for trial or continuance, and it is not incumbent on him who makes the application to ask postponement to a future day of the same term. The court may do so on the application for continuance if the condition of the public business or the situation in that particular case makes it advisable.

The testimony of the absent witnesses was of great importance to the accused. The error is not cured because accused himself admitted that, after Bell had shot him in the face and head, he fired his pistol at Bell while Bell was running. He may, perhaps, be entitled in this case to the benefit before the jury of the principle that, under some circumstances, one may anticipate his antagonist if it appear that his flight was for vantage. To enable them to judge of this, the testimony of the absent witnesses was material, and defendant was entitled to

their presence, because he had no opportunity for compulsory process to secure it.   Code 1892, § 1425.

The sixth instruction was erroneous on its face as matter of law, and it was bad practice to permit its use as it was used. The indictment has two counts in one: First, a perfect charge of an assault with intent to kill and murder; and, second, a perfect charge of assault and battery with that intent.   There was no evidence whatever of any battery.   On the contrary, it is clear that defendant never hit his man, but it was he who was actually shot.   The instruction told the jury that, "even though the indictment charges that defendant did strike and wound and maim Simon Bell, yet, if the evidence fails to disclose that Simon was shot or wounded, this makes no difference whatever; if the jury believe from the evidence beyond reasonable doubt that defendant shot at him, Simon, with intent to kill Simon when he was not in real or apparent danger of losing his life, or of great bodily harm at the hands of Simon, then the defendant is guilty, and this is true even though he failed to hit him with either of his shots."   The verdict was, "Guilty as charged in the indictment;" thus, in obedience to the charge, convicting of the battery as well as of the assault.   In 1 Whart. Cr. Law (10th ed.), sec. 640, it is said: "But there can be no conviction of a battery unless a battery be averred or implied." Every battery implies an assault, of course, because there can be no battery without an assault; but there may be an assault without any battery.   The jury may convict of an assault under an indictment for assault and battery, but may not convict of assault and battery with no evidence of battery.   An assault is simply an attempt to hurt, with the power to hurt, while the battery is where the hurt is done pursuant to the assault, and a defendant should not be convicted of what he has clearly not done.   Our own statute (Code 1892, § 967) draws the distinction.   It provides: "Every person who shall be convicted of  .   .   .   any assault or assault and battery," etc., shall be punished, providing the same punishment.   The

record history of this instruction shows that it was had of the court by counsel for the state during the argument for the defendant, whose counsel were in entire ignorance of it, and that it was for the first time produced by the counsel for the state in his closing argument to the jury, telling them that he had gotten the instruction from the court to answer the argument of counsel for the defense, who immediately objected and excepted to this practice, the court remaining silent. It is true that the state's attorney then said: "Counsel may answer the instruction now." This proceeding was not good practice, and not cured by the remark of the state's attorney, action on which might have required the reshaping of the whole argument. The court may grant instructions at any time before the jury retires, but not secretly. Other counsel interested should know of it, even though they have to be stopped in argument. This is the proper practice; though, in a case where the charge was clearly right, and not so adroitly prepared as to possibly mislead the jury, we would not reverse for a deviation from it. But we would reverse for this alone in the case before us. We write in full view of *Wood* v. *State,* 64 Miss., 775 (2 South. Rep., 247), and do not modify or overrule that case. We are not sufficiently informed of the exact situation in that case to do either. We feel sure, however, that the correct practice, under our system, is for the court to pass on all instructions asked on both sides before the argument to the jury begins. This rule should not be deviated from except on rare and emergent occasions in the discretion of the court, and even then with opportunity to the other side to prepare and request any counter charge applicable to its view of the facts; otherwise great injustice might occur to the defendant in favor of the party with the closing argument. Underholds and blows beneath the belt should never characterize trials, especially trials involving life or liberty. A court should so deport itself as that no juror or bystander can surmise its view of the facts. It is an unbiased jury alone which should pass on the facts; and this, on the theory of the

law in Mississippi, is designed for the protection of innocence, which is presumed of all men until disproved in the legal mode on a fair and impartial administration of equal and exact justice.

*Reversed and remanded.*