## HAYS v. STATE.

### [94 South. 212.   No. 22309.]

1. HOMICIDE. *Instruction defining murder held not error.*

   An instruction for the state in a murder case, "that murder is the unlawful killing of a human being without authority of law, when done by any means or in any manner when done with the deliberate design to effect the death of the person killed," is not reversible error.

2. HOMICIDE. *Killing after blow struck in self-defense and when no real or apparent danger existed held murder.*

   An instruction which tells the jury that, though they may believe the first blow was struck in necessary self-defense "yet if you further believe from the facts and circumstances in the case beyond every reasonable doubt, that the defendant abandoned the deceased and left him prostrate and helpless on the ground, and you further believe from the proven facts and circumstances, beyond every reasonable doubt, that the defendant afterwards heard the deceased groaning and struggling, and that he (the defendant) returned to the deceased with a rifle, and at a time when the defendant was in no real or apparent danger of losing his own life or suffering some bodily harm at the hands of the deceased, the defendant willfully and feloniously, and of his malice aforethought struck the deceased a fatal blow or blows, and that said blow or blows proved fatal or contributed to the death of the deceased, then you should find the defendant guilty as charged, regardless of every other fact or circumstance in the case," is not error where there is evidence to support such hypothesis.

3. HOMICIDE. *Conviction warranted by evidence not reversed because of instruction shutting off right of self-defense.*

   An instruction shutting off the right of self-defense should not ordinarily be asked or given, but where the evidence shows that the defendant armed himself for the difficulty with the intent to use the weapon if necessary to overcome the deceased, and the instruction is correctly drawn, this court will not reverse a conviction amply warranted by the evidence.

4. CRIMINAL LAW. *No error can be assigned on failure to give instruction requested by neither party.*

   Under the statutes of this state the trial court cannot give an in-

struction unless requested in writing by one of the parties to
the suit to do so, and no error can be predicated on such failure
unless the court was requested by one of the litigants to so in-
struct, hence where neither the defendant nor the state re-
quested an instruction on manslaughter in a homicide case, no
error can be assigned.

APPEAL from circuit court of Simpson county.
HON. W. H. HUGHES, Judge.
Wiley Hays was convicted of murder, and he appeals.
Affirmed.

*A. W. Dent* and *G. H. Merrell,* for appellant.

We shall first direct the court's attention to the criticism
we have on instruction No. 1, and submit it is not a def-
inition of murder as defined by section 957, Hemingway's
Code, or any other definition of murder we are able to
find anywhere, and is so misleading and confusing that
the jurors could not intelligently consider the other in-
structions by using this instruction No. 1 as a basis and
definition of murder.

We have been always taught that the use of two nega-
tives is equivalent to an affirmative, for example: *Nemo
non audiet* (nobody will not hear), which means, every one
will hear. *Nemo non, nullus non* (nobody does not), which
means that, everybody does. *Non Nemo* (not nobody),
means, somebody. The use of two negatives either ex-
presses an indefinite affirmative, or universal affirmative.
This rule, we understand, is without an exception.

Applying this rule what does the instruction mean. It
means and can only mean this: "That murder is the killing
of a human being, when done by any means or in any man-
ner when done with the deliberate design to effect the
death of the person killed."

Certainly an unlawful act cannot be done without au-
thority of law. Neither can an unlawful act be done with-
out authority of law. Unlawful certainty means not law-
ful; so likewise "without authority of law," means not

lawful.  Now we see what the court says murder is: "The not lawful killing of a human being not lawful.  Remember that two negatives are equivalent to an affirmative, and we have what the court says murder is, viz: That murder is the killing of a human being when done by any means or in any manner when done with the deliberate design to effect the death of the person killed."

It will be seen that this definition of murder excludes justifiable and excusable homicide, and therefore, the jury could not consider the evidence and instructions of appellant on self-defense.  From this instruction, it made no difference if appellant did act in self-defense he was guilty of murder; it made no difference if appellant was in imminent danger of being shot by the deceased, he had no lawful right to the lawful defense of his own person and the jury could not consider the law of self-defense of his own person, and the jury could not consider the law of self-defense.  When the statute gives the definition of murder in plain English, it should be followed, and courts should not be permitted to enlarge on that definition, if by so doing, it is calculated to mislead the jury, men of good intelligence, sound judgment and fair character.

In the case of *Rutherford* v. *State,* 100 Miss. 832, 57 So. 224, this court held the following instructions as fatal error, the instruction being: No. I.  "The court charges the jury, for the state, that murder is the killing of a human being, by any means or in any manner, when done with the deliberate design to effect the death of the person killed."  Citing the case of *Ivy* v. *State,* 84 Miss. 264, 36 So. 265.

All we have to safeguard our liberties is a correct understanding of the law which is for protection.  By a correct analysis of instruction No. 1, in case at bar, it will be seen that it is exactly the same definition of murder as given in the *Rutherford* and *Ivy cases, supra,* both of which were reversed on account of fatal error in the definition of murder.

We confidently expect a reversal of the case at bar by reason of fatal error in the giving of instruction No. 1 on the definition of murder. Possibly it need not have been given, but as it was given it should have been correct. We submit there is another reason why this case should be reversed, and that is in giving the law as to real or apparent danger in the various instructions given the state, and the refusal of the instruction appearing on page 117 of the record asked for by appellant.

For convenience we quote and refer to that part of the instructions for the state complained of. Record page 103: "And at a time when the defendant was in no real or apparent danger of losing his own life or suffering some great bodily harm at the hands of the deceased, the defendant wilfully and feloniously and of his malice aforethought, struck the deceased a fatal blow or blows, and that said blow or blows proved fatal or contributed to the death of the deceased, then you should find the defendant guilty as charged, regardless of every other fact or circumstance in the case."

Assuming that the part of the instruction not quoted is correct, it appears from this quoted part that appellant had to be in either real or apparent danger before he could act, regardless of however honest he might have been in his belief that he was in imminent, pressing and unavoidable danger of losing his own life or suffering some great bodily harm at the hands of the deceased. Appellant had no right to take in the situation, circumstances and surroundings at the time; under this instruction the danger must be real or apparent regardless of appellant's honest belief situated as he was at the time. Appellant may have actually and honestly believed at the time he was in very great danger of loosing his life or suffering great bodily harm when after-developed facts showed he was in neither real or apparent danger. The jury should have been permitted to consider his belief at the time, situated as he was, confronted by his adversary. Under this instruction they were not permtted to do this, because it says they must con-

vict appellant regardless of every other fact or circumstance in the case. Pray, why any other instructions?

No other fact or circumstance can be considered except as contained in that instruction. The state was not content with that instruction although the jury could consider no other fact or circumstance; and instruction No. 4 even told the jury they need not consider the warning appellant gave the deceased to stay away from his people, if at the time he struck deceased the fatal blow, he, appellant, "was in no real or apparent danger of losing his own life or suffering some great bodily harm at the hands of the deceased," he was guilty of murder and the jury should so find. In this instruction No. 4 will be found a repetition of the same language used in instruction No. 5, with reference to real or apparent danger. For convenience, we quote: "at a time when the defendant was in no real or apparent danger of losing his own life or suffering some great bodily harm at the hands of the deceased." It will be noted from these two instructions for the state that appellant had to be in either real or apparent danger regardless of the belief a reasonable man might have had, situated as he was at the time. The jury should have been permitted to pass upon the reasonableness of his belief, situated as he was, at the time he struck the fatal blow, but this could not be done by reason of instruction No. 5, which says that the jury must convict "regardless of every other fact and circumstance in the case." No other fact or circumstance could be considered except as contained in instruction No. 5.

In no instruction either for the state or appellant were the jurors permitted to consider the good faith of appellant when he struck the fatal blow. We submit that was fatal error on the part of the court for which this case should be reversed and remanded.

*Wm. Hemingway,* assistant attorney-general for the appellee.

130 Miss.—25

The appellant complains of instruction No. 1. He segregates the last part of the instruction from the first. It may be conceded that it could have been better written, and if it is susceptible of the meaning that the appellant contends for under the cases which he cites, it might be error. But the first part of the instruction is unobjectionable. The instructions on the whole, properly state the law, but no other attempt is made to define murder, but the law of the case is well presented by both sides and it does not seem to have misled the jury.

The expression "without authority of law" which appears in this instruction apparently removes the vice from it, and the meaning of the instruction can be gathered by any one who may read it. The other objections urged by the appellant are as to when a person can act upon apprehension of danger, and who is to judge of that danger. Appellant's counsel has cited some cases at the last of his brief, bearing on this point, but there is one underlying rule in all of the cases. That is, that the jury must determine what apparent danger or reasonable apprehension of danger is. The mere fear, apprehension or belief, however, sincerely entertained by one person, that another designs to take his life, will not justify the former in taking the life of the latter. *Wesley* v. *State,* 37 Miss. 327.

The party acts at his peril; he is not the final judge. The jury must determine the reasonableness of the ground upon which he acts. *Evans* v. *State,* 44 Miss. 762. And as to what apparent danger means, see *Parker* v. *State,* 55 Miss. 441. The mere fear, apprehension or belief, however sincerely entertained by one person that another designs to take his life will not justify the former in taking the life of the latter. *Scott* v. *State,* 56 Miss. 287. See, also, *Spivy* v. *State,* 58 Miss. 858.

The instructions given for the state and the one refused for the defense, which appellant complains of were properly treated under the rule that is involved in these cases. Human life is too sacred, and the protection of society too necessary, to permit a person to judge of such a mat-

ter himself. See also, *Mathews* v. *State,* 108 Miss. 72, 66 So. 325; *Waller* v. *State,* 95 Miss. 557, 44 So. 825.

ETHRIDGE, J., delivered the opinion of the court.

Appellant, Wiley Hays, was indicted and convicted of the murder of Leonidas Rankin and given a life sentence in the state penitentiary. The facts in the case are that the appellant came up with the deceased coming away from some meeting at a neighboring schoolhouse, the deceased being in company with the wife and daughters of the appellant. The appellant and his wife had been separated for about ten years, and he and his family were not on good terms. He came up with the deceased and his wife and daughters and said to deceased in effect, "Didn't I tell you to stay away from my place or folks?" to which the deceased in substance replied that he understood the road was free and that he could go where he pleased. Some words passed and appellant struck deceased over the head with a small rifle which he had with him. According to the testimony of the state's witnesses he walked on to the house with his wife and daughters, which was only a few steps away from the scene of the difficulty, and ordered his wife and daughters to go in the house and, hearing a groan from deceased, he returned and struck him a number of blows over the head with the rifle, from which blows deceased died, never having regained consciousness.

Appellant's theory is that deceased attempted to draw a pistol and that he struck him in self-defense and kept striking him until he secured possession of the pistol. He denies that he returned to the deceased and struck him after he left him.

It is first insisted that instruction No. 1 for the state is erroneous. This instruction read as follows: "The court charges the jury for the state that murder is the unlawful killing of a human being without authority of law, when done by any means or in any manner when done with the deliberate design to effect the death of the person killed.

The criticism of the instruction is that the words "unlawful killing" and "without authority of law" constitute a double negative and are equivalent to an affirmative, and does not constitute the definition of murder. We do not think the objection well taken. It was not necessary to use both terms, but it is manifest that the instruction was excepting out of the definition a lawful killing. In our opinion no person could be misled thereby.

It is also assigned for error that the court committed reversible error in giving instruction No. 5, which is as follows:

"The court charges the jury for the state that, even though you may believe from the evidence in the case that the deceased pulled a pistol from his bosom and was attempting to use the same on the defendant, and that the defendant struck the deceased with a rifle in his necessary self-defense; yet if you further believe from the facts and circumstances in the case beyond every reasonable doubt, that the defendant abandoned the deceased and left him prostrate and helpless on the ground, and you further believe from the proven facts and circumstances beyond every reasonable doubt that the defendant, afterwards heard the deceased groaning and struggling, and that he (the defendant) returned to the deceased with a rifle, and, at a time when the defendant was in no real or apparent danger of losing his own life or suffering some bodily harm at the hands of the deceased, the defendant willfully and feloniously and of his malice aforethought struck the deceased a fatal blow or blows, and that said blow or blows proved fatal or contributed to the death of the deceased, then you should find the defendant guilty as charged, regardless of every other fact or circumstance in the case."

It is admitted that the first part of this instruction is correct. But it is contended that it ignores in the latter part the right to act upon appearances, and that it does not give the defendant the right to act upon appearances. We think the instruction plainly shows that it recognizes apparent danger as well as actual danger, and when ap-

plied to the facts and evidence on the part of the state correctly stated the law.

It is next insisted that it was error to give instruction No. 3, which read as follows:

"The court charges the jury for the state that if you believe from the evidence beyond a reasonable doubt that the defendant, Wiley Hays, armed himself with a deadly weapon, to-wit, a rifle, intending to use same for the purpose of overcoming his adversary, if necessary, and being thus armed, provoked a difficulty with the deceased in which difficulty he used said deadly weapon and killed deceased, then in that event the defendant cannot be heard to say that he acted in self-defense, unless you further believe from the evidence that he (the defendant) acting in good faith, attempted to abandon the difficulty finally."

An objection raised is that there was no evidence justifying the giving of this charge. The evidence is that the defendant was armed with a rifle and that he followed the deceased from a social gathering, provoked the difficulty, and used this rifle in the combat. The explanation of the appellant as to the reason for having the gun was that he had promised a neighbor to go and kill a goat. The explanation of being armed is, we think, unreasonable under the circumstances in evidence, and being armed with a rifle at night, under all the circumstances appearing in the record, we think authorizes the jury to infer that the appellant armed himself for the purpose of the difficulty, and that the jury had a right to disbelieve his statement under the circumstances and to believe that he sought the deceased with the intent to kill him.

While instructions shutting off the right to self-defense should not ordinarily be asked or given, still, when they announce the correct rule of law and find support in the evidence, we cannot reverse a conviction because they are given.

It is next insisted that an instruction on manslaughter should have been given. Under our system the court is powerless to give an instruction unless it is asked to do

so, and before the appellant can complain of the failure to give one he must show that it was asked.

We find no reversible error in the record, and the judgment is affirmed.

*Affirmed.*