ALLEN v. STATE.*

(Division A.   June 8, 1925.)

[104 So. 353.   No. 24713.]

1. CRIMINAL LAW. *Instruction held erroneous, as excluding verdict of manslaughter warranted by evidence.*

Instructions that jury might return either of the three verdicts authorized on a conviction of murder, or a verdict of not guilty, thus excluding manslaughter, though the evidence would warrant a verdict thereof, was reversible error, though no instruction on manslaughter was requested.

2. HOMICIDE. *Instructions to be limited to issues developed by evidence.*

    Instructions should be limited to the issues developed by evidence, and so should not make a conviction conditional on defendant at the time he inflicted the blows, not having been in some real or apparent danger at the hands of deceased, when there is no suggestion of such danger.

*Headnotes 1. Criminal Law, 17 C. J., section 333; 2. Criminal Law, 16 C. J., section 2485; Homicide, 30 C. J., section 627.

APPEAL from circuit court of Jasper county.
HON. W. L. CRANFORD, Judge.
Mat Allen was convicted of murder, and he appeals. Reversed and remanded.

*Deavours & Hilbun* and *J. A. McFarland,* for appellant.

The court erred in granting instruction No. one for the state, reading as follows: "The court instructs the jury for the state that you may return either of the following verdicts in this case to-wit:" then follow three forms of verdicts, one of them being, "We, the jury, find the defendant guilty as charged;" another being, "We, the jury, find the defendant guilty as charged and recommend that he be given life imprisonment in the state penitentiary;" another one being, "We, the jury, find the defendant guilty as charged but fail to agree on the punishment;" and the last being, "We, the jury, find the defentant not guilty."

The court will note that no provision is made in this instruction, and no provision is made in any other instruction given for the state or for the defendant, authorizing the jury to return a verdict against the defendant as guilty of manslaughter. In other words the instructions for the state restrict the jury absolutely to passing upon the question of the defendant's guilt of murder only. We contend that this was error. And we further contend that the trial court ought not to have

given instruction No. 1 as given, without first modifying it by adding another form of verdict which the jury might render if they found the appellant guilty of manslaughter, which would have required the addition of another form of verdict that the jury might render, to-wit: "We, the jury, find the defendant guilty of manslaughter." The vice of this instruction number one is made more apparent when it is considered that there is no statement in the instruction as to the jury's belief beyond every reasonable doubt, of the defendant's guilt of the charge of murder made against him. There is no statement in the instruction as to what the jury must believe nor as to the clearness with which they must believe what they do believe, in order to justify them in returning either one of the first three verdicts mentioned in the instruction.

If as a matter of fact this is a case of manslaughter, or if as a matter of fact, the jury was authorized in this case to return a verdict of manslaughter, then by this instruction for the state (there being no curative instruction in the case)' the jury was restricted to the consideration of a charge that was not clearly made against the appellant and that the jury, from the instructions of the court, did not understand, and could not understand, was made at all against the appellant. It would follow that if this is a case of manslaughter, or can reasonably be made a case of manslaughter, then under the instructions of the court, the appellant has not been tried for the crime he actually committed, if he committed any crime, or the crime which he probably committed.

We contend that it is patent error for an instruction to be phrased in a murder case in the words in which this instruction is phrased. Section 1499, Code 1906, (section 1257, Hemingway's Code).

Now this section of the code expressly provides that on the trial of a defendant for any offense, the jury may find the defendant guilty of that offense as charged . . . or may find him guilty of an inferior offense, or other offense, the commission of which is necessarily in-

cluded in the offense with which he is charged in the in-dictment.

A charge of manslaughter is included in a charge of murder and a defendant charged with murder may be found guilty of manslaughter. We believe we can safely assert that the jury that tried appellant never had any information derivable from the instructions of the court that it was authorized to return a verdict of guilty of manslaughter against the appellant. And yet that such was the law is beyond the suggestion of any doubt.

Is the liberty of a man for the remainder of his natural life to be sacrificed by the court, because the trial court in prescribing the form of verdict that the jury could render, thereby restricted the jury to a verdict of guilty or not guilty of murder, when this instruction of the court is really not the law of the land?

We further submit that this instruction even if it had provided for a verdict of manslaughter, would not have been proper and was not proper unless there had been qualifying words in its preliminary part indicating to the jury the degree of belief that they must have before they are authorized to return a verdict of either murder or manslaughter, that is belief of guilt from the testimony beyond every reasonable doubt.

## II.

The court erred in granting instruction number two for the state reading as follows: "The court instructs the jury for the state, that if you believe from the evidence in this case beyond a reasonable doubt that defendant, Mat Allen, did unlawfully, willfully, feloniously and of his malice aforethought kill and murder Jim Bethea, a human being, in manner and form as charged in the indictment, and at a time when he the said Mat Allen was in no real or apparent danger of losing his own life or sustaining some great bodily harm at the hands of deceased, then in that event it is your sworn duty to find defendant guilty as charged."

A part of the criticism that we direct towards this instruction is equally applicable to instruction number three for the state, which is hereinafter referred to. It is of course fundamental that the instructions as to the law of a case ought to be applicable to the case as made by the evidence. The instructions for the state ought to develop and elucidate the law as stated in the instructions as being applicable to the facts of the case as revealed by the testimony of the witnesses. On the trial of any murder case, of course the state has, or ought to have, a theory as to how the killing occurred, and the testimony of the witnesses ought to be grouped about and around this theory; or if the theory is not to be developed until after the testimony is heard in court, then the announcement of the law that governs the case in the instructions of the court ought to be in harmony with and consistent with the theory of the prosecution, regardless of whether that theory is adopted by the state before the testimony has been heard in court or after it has been heard in court. And it is error for instructions to be given that have no application to the case as developed by the testimony. It would be improper for the court to give an instruction in reference to larceny in a murder case. The instructions given in reference to larceny might be correct instructions so far as the law of larceny is concerned, but that law being wholly inapplicable to a case of murder, such instructions would be erroneous, It is a wise rule that has been announced many times by this court that the instructions ought to be applicable to the case as developed by the testimony. *Staiger* v. *State*, 110 Miss. 557; *Johnson* v. *State*, 78 Miss. 627.

There is nothing in the testimony of any witness in this case, either for the state or the defendant that indicates that there was any difficulty between the appellant and the deceased. There is nothing in the testimony anywhere that squints of any such matter. There is no pretense that the appellant was ever at any time in real or apparent danger of losing his own life or sustaining some great bodily harm at the hands of the deceased. It is

not shown or hinted at anywhere in the testimony by any witness on either side, that there was ever any contest between the appellant and the deceased. It was no part of the theory of the state in this case that anything had occurred between the parties that would give any basis real or imaginary for a claim by the appellant that he was ever at any time in danger of losing his life or of some great bodily harm at the hands of the deceased. Any such theory as that is foreign to all the testimony in the case.

Yet, with there being no suggestion in the testimony of any such theory on the part of either the state or the defendant, the state planted itself squarely upon the proposition both in instruction number two and in instruction number three that if the killing was done by the appellant at a time when the appellant was in no real or apparent danger of losing his own life or sustaining some great bodlily harm at the hands of the deceased, then and in that event the killing was murder and the defendant should be found guilty as charged in the indictment.

By instruction number two and instruction number three the question presented to the jury was an entirely different question from the question presented to the jury by the testimony of the case. In determining this case under either the second or third instruction given for the state, the mind of the jury was specifically directed to the determination of a question—what is the real apparent danger appellant was in from the deceased —when no such question was involved in the case, and when no such defense had been presented by the appellant, and when there was no testimony touching upon any such matter from either side. Of course, the appellant was not at any time in real or apparent danger from the deceased. That was not the question in the case, and the specific direction to the jury to determine that question must necessarily have led the minds of the jury away from the true issue to be determined by their verdict.

These two instructions for the state, being as we have said the only instructions asked and given for the state except the one in reference to the form of verdict they might render, not only misled the jury as to the question that was submitted to them for decision, but put the appellant in the false attitude of having, according to the state's instructions, admitted or confessed the killing and of having set up justification as the cause or reason for the killing. And so the state drew its instructions (but even then not accurately) under section 960, Hemingway's Code, which has reference to justifiable homicide.

If the state was determined in this case to stand by the theory that murder had been committed by any act of appellant, and if it had any basis in the testimony, and we contend that it did not have such basis, then its instructions should have been drawn under section 957, Hemingway's Code, which section sets forth with particularity the instances in which the killing of a human being shall be murder.

*J. L. Byrd*, Assistant Attorney-General, for the state.

The state secured only three instructions, which appellant's counsel vigorously assails. The first instruction is as to the different verdicts which the jury might render, but the instruction does not instruct them as to their power to render a verdict of manslaughter. Counsel say that the instruction is fatally erroneous for that reason and that the instruction should have embraced the charge to the jury that they might find the defendant guilty of manslaughter.

We submit that this was not error. It was not incumbent on the state to ask any such instruction and of course the court had no power to grant that which is not requested. The defendant could have asked for this instruction and if he did not see fit so to do, the fault is not with the state, but is with him.

This court had held in *Hays* v. *State*, 94 So. 212, that it is not error to fail to give the manslaughter instruction in a case where the defendant is charged with murder, and the holding is in the following language by Justice ETHRIDGE: "It is next insisted that an instruction on manslaughter should have been given. Under our system the court is powerless to give an instruction unless it is asked to do so, and before the appellant can complain of the failure to give one he must show that it was asked."

Complaint is made of Instructions Nos. 2 and 3 granted the state but we submit that these instructions state the law and were applicable to the facts of the case. They have been approved many many times by the court and nowhere can we find where they have ever been condemned. Counsel cites no authority of this or any other state holding the instructions erroneous, and we submit that there are none.

The main ground on which reversal is sought is the insufficiency of the evidence to support the verdict. We respectfully submit that there is ample evidence on which the jury could and did act.

We respectfully submit, that considering this record as a whole and construing all the instructions together, there is no reversible error in the record and the cause should be affirmed.

COOK, J., delivered the opinion of the court.

The appellant, Mat Allen, was convicted in the circuit court of Jasper county on a charge of murder, and sentenced to the penitentiary for life, and from this conviction and sentence this appeal was prosecuted.

The record discloses that the appellant was an unmarried man, living on a farm with his mother, who was helpless and blind, and supposed to be about one hundred years old. Jim Bethea, the deceased, was a mentally defective dwarf, an anemic of the most pronounced type, and physically very weak and emaciated. He was a nephew of the appellant, and, for about ten

years prior to his death, he lived in the home of appellant as a member of the family. Another weak-minded nephew of appellant, a cousin of the deceased, also lived in the home of appellant as a member of the family. At the time of the death of Jim Bethea, these two boys were about twenty years old. They had lived in the home of the appellant for many years, doing such farm work as they were capable of performing.

In March, 1924, Jim Bethea died at the home of appellant. Early in the night of the death of this boy, the appellant went to the home of a neighbor and requested him to send a messenger for a doctor, saying that the boy was seriously sick. The doctor was not at home, and did not reach the home of appellant until some time during the next day, and after the death of the boy. He made an examination of the body of the deceased, and testified that he found a number of bruises and scars on the body, some of them being fresh, other partly healed; that the deceased's collar bone was broken or dislocated; that the marks, scars, and bruises on the body of deceased might have been caused by a fall or from blows inflicted; that the body was so emaciated that a slight blow might have produced a condition that would have resulted in death. The doctor further testified that the appellant invited him to make the fullest examination of the body, stating that he was afraid people might think he had killed the deceased.

Neighbors who assisted in preparing the body for burial testified that they noted many severe marks and bruises on the body of the deceased, and also the broken or dislocated collar bone. Two witnesses testified that about two weeks before the boy died they saw the appellant give him a very severe beating with a stick which appeared to be about three feet long and nearly an inch in diameter. Another witness testified that, on the day before the boy died at night, he saw the appellant give him a very severe whipping; that he was using a stick of considerable size, and striking him around the neck and shoulders. There was much other testimony bear-

ing upon the issues involved, the details of which it is un-
necessary to here state.

The appellant assigns as error an instruction granted
at the request of the state which informed the jury that,
in this case, they might return either of the three ver-
dicts authorized upon a conviction of murder, or a ver-
dict of not guilty. While it is true that neither side re-
quested an instruction defining manslaughter or announc-
ing the law applicable thereto, and consequently the ap-
pellant cannot complain that no instructions on that issue
were given, yet we think it is clear that, upon the proof,
a verdict of manslaughter might have been properly re-
turned, but the instruction complained of excludes the
right so to do. Under the testimony in this case it was
a question for the jury as to whether the appellant was
guilty of murder, manslaughter, or nothing, and it was
error to grant an instruction upon the verdicts that
might be returned in a form that shut up the jury to a
verdict of murder or nothing. This point was decided in
the case of *Johnson* v. *State,* 75 Miss. 635, 23 So. 579, in
which it was expressly held that where, under the proof,
a manslaughter verdict might properly be returned, it
was reversible error to grant an instruction on the form
of verdicts which shut the jury up to a verdict of murder
or nothing.

The appellant also complains of certain instructions
granted the state, which authorized a conviction of mur-
der under certain facts, unless at the time the blows were
inflicted the appellant was in some real or apparent dan-
ger of losing his life or suffering some great bodily harm
at the hands of the deceased. There is not a hint or
suggestion in the entire record that the appellant was
ever in any danger at the hands of the deceased, and the
theory of self-defense was in no way involved, and con-
sequently we do not think it should have been incorpo-
rated in these instructions. We do not hold that these
instructions alone would constitute reversible error in

this case, but the instructions should be limited to the issues in the case as developed by the testimony.

For the error indicated, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*