## COSEY v. STATE.

(In Banc. Dec. 7, 1931.)

[138 So. 344. No. 29551.]

G. L. Larr, Jr., of Vicksburg, for appellant.

C. O. Japp, of Jackson, for appellant.

**W. A. Shipman,** Assistant Attorney-General, for the state.

Argued orally by **C. O. Japp**, for appellant, and by **W. A. Shipman**, Assistant Attorney-General, for the state.

**Ethridge, J.**, delivered the opinion of the court.

The appellant was indicted, tried, and convicted of murder and sentenced to death, and appeals from said judgment.

The appellant killed one William Davis, an employee of Mrs. Clara Hawkins, near Vicksburg in Warren county. It appears that on or about the 30th day of December, 1930, Davis with some negroes was engaged in killing and dressing hogs on the premises of Mrs. Hawkins. The appellant came where the negroes were working and engaged in conversation with them, and appears to have been using indecent language. According to some of the witnesses, Mrs. Hawkins came out of the house and ordered the appellant to leave. He addressed a very insulting remark to her, whereupon the

deceased, Davis, ordered the appellant away. The appellant left the premises in question in the morning, and the killing occurred about four o'clock in the afternoon. According to eyewitnesses, the appellant came where the deceased was in a truck at a store near the residence of Mrs. Hawkins, and stepped upon the running board of the truck and asked Davis about settling off for what happened that morning, and Davis ordered him to leave the truck, and started the truck in motion, when the appellant fired with a shotgun and killed Davis.

According to another witness for the state, on the afternoon of the killing and prior thereto the appellant stated that he was going to kill Davis and gave his reason therefor that he ordered him away from the premises of Mrs. Hawkins on that day.

According to the appellant's testimony, he went to where the negroes were at work on the place of Mrs. Hawkins, and was there talking to the negroes; that Mrs. Hawkins did not hear him use any obscene language, and that Davis misunderstood what he said on that occasion; but that Davis chased him off the place with a knife; and that he had the gun, on the occasion when he killed Davis, for the purpose of going hunting and calling on some girls. He stated that the hunting was somewhat of an excuse to go by and call on the girls. He stepped on the running board of the truck at the time of the killing and stated to Davis that he (Davis) misunderstood what he said that morning, and that Davis ordered him off the truck and reached into a bucket where there were some knives and a butcher's cleaver, and he thought Davis was going to attack him with a knife or with the cleaver, and he fired in self-defense. Eyewitnesses contradict the appellant as to this statement.

When the appellant was arraigned in court to plead to the indictment, he pleaded that he was not guilty as therein charged, but was guilty of manslaughter. The court thereupon entered the following order: "Came

the district attorney who prosecutes for and on behalf of the State and also came the defendant in his own proper person, attended by his counsel, and the said defendant being solemnly arraigned and charged on the indictment herein, says that he is not guilty as therein charged but is guilty of manslaughter, and for his trial puts himself upon the country and the district attorney doth the like. It is thereupon ordered by the court that said defendant be remanded to await trial.''

Subsequently the appellant was again brought into court on the day set for the trial, and the following colloquy was had, as shown by the record:

''Mr. Robbins (District Attorney) reads indictment.

''By the Court: Waddell, what plea do you enter to this indictment?

''By the Defendant: I plead guilty.

''By the Court: Do you understand all that plea means?

''By the Defendant: No, sir, not exactly.

''By the Court: Has your attorney explained to you what a plea of guilty would mean if you plead guilty to murder?

''By the Defendant: Yes, sir.

''By the Court: He has explained it to you?

''By the Defendant: Yes, sir.

''By the Court: What is it about it you don't understand?

''By the Defendant: I don't understand the effects of guilty. I understand whether or not I am guilty of crime and plead guilty or not. That is all I understand about it.

''By Mr. Larr (Attorney for defendant): Gentlemen of the Jury, to this indictment the defendant pleads guilty and asks the mercy of this jury.''

It is contended on appeal that the plea of not guilty to murder but guilty to manslaughter with the order above set out was an acceptance of the plea of man-

slaughter by the court, and it was error thereafter to try the appellant on a charge of murder. It is perfectly manifest from the order that the court did not accept the appellant's plea of guilty of manslaughter. He was arraigned on a charge of murder and undertook to plead guilty to manslaughter, but the order shows that he put himself upon the country, and the ''District Attorney doth the like,'' and he was remanded to await his trial. This clearly shows that issue was taken on his plea of not guilty, and that the district attorney in the court refused to accept his plea of manslaughter.

It is contended that the other proceedings on the day of the trial were erroneous, because they were had in the presence of the jury. We think the record shows that the appellant was pleading guilty and asking the mercy of the jury with a hope of getting a life sentence rather than the death penalty. When the indictment was read the defendant pleaded guilty. The colloquy between the court and the defendant was for the purpose of seeing if the defendant understood what he was doing and the consequence of his plea. It might have been better to have had the defendant arraigned on the indictment in the absence of the jury who were to try the issue. However, the defendant when arraigned pleaded guilty and the court was not willing to accept the plea as entered, but put the defendant to trial before the jury. The defendant's attorney did not object at the time to the proceedings being in the presence of the jury. He also stated to the jury, in explanation of the appellant's position and colloquy, that appellant placed himself upon the mercy of the jury with a plea of guilty, and the jury had the power to fix the punishment at life imprisonment rather than death, should they see proper so to do.

It is further argued that the killing had elements of manslaughter, and the jury could have rightfully convicted him of manslaughter instead of murder, and that

the court should have required the district attorney to obtain an instruction defining manslaughter.

We are of the opinion that the evidence fully warranted the conviction of murder. There is nothing, in our judgment, which would have warranted the jury in finding a verdict of manslaughter, but if the evidence was of such character as would warrant the jury in finding manslaughter, the appellant, or his attorney, should have requested the instruction informing the jury of the law upon that subject. Under our statutes the circuit judge cannot give instructions unless requested in writing by the parties or some of them. Section 586, Code of 1930, section 793, Code of 1906, provides that: ''The judge in any cause, civil or criminal, shall not sum up or comment on the testimony, or charge the jury as to the weight of evidence; but at the request of either party he shall instruct the jury upon the principles of law applicable to the case. All instructions asked by either party must be in writing, and all alterations or modifications of instructions given by the court or refused shall be in writing, and those given may be taken out by the jury on its retirement.''

In early cases under this statute there were two decisions which, in effect, held that the court should require the district attorney to obtain instruction on manslaughter where the evidence warranted a theory of manslaughter. The court, however, is now fully committed to the doctrine that the court is not required to give an instruction not requested either by the state or by the defendant. See Edwards v. Gulfport, 95 Miss. 148, 49 So. 620; Canterbury v. State, 90 Miss. 279, 43 So. 678; Harvey v. State, 95 Miss. 601, 49 So. 268; Williams v. State, 95 Miss. 671, 49 So. 513; James v. State, 106 Miss. 353, 63 So. 669; Dixon v. State, 106 Miss. 697, 64 So. 468; Akroyd v. State, 107 Miss. 51, 64 So. 936; Pringle v. State, 108 Miss. 802, 67 So. 455; Simmons v. State, 106 Miss. 732, 64 So. 721; Matthews v. State, 108

Miss. 72, 66 So. 325; Davenport v. State, 121 Miss. 548, 83 So. 738; McLeod v. State, 130 Miss. 83, 92 So. 828; Hays v. State, 130 Miss. 381, 94 So. 212; Stevenson v. State, 136 Miss. 22, 100 So. 525; Allen v. State, 139 Miss. 605, 104 So. 353; Dalton v. State, 141 Miss. 841, 105 So. 784; Tatum v. State, 142 Miss. 110, 107 So. 418; Davis v. State, 157 Miss. 669, 128 So. 885.

We find no error in the conduct of the trial below, and the judgment is affirmed, and Wednesday, the 13th day of January, 1932, is fixed as the day of execution.

Affirmed, and Wednesday, 13th day of January, 1932, fixed as the day of execution.